That's correct. Thank you. If I may begin. Please. Your Honor, we're here today on a, this case is a trademark and copyright case that was dismissed below for lack of personal jurisdiction. I'd like to make four broad points. First, the governing rule on a motion to dismiss in a case such as this is that the facts, uncontroverted facts, must be taken as true. I'd also point out that both parties made a mistake in their briefs citing to Thompson v. Chrysler where we said they may be taken as true, but the rule is that they must be taken as true. Second is the substantive law of copyrights and trademarks. The court below really didn't pay sufficient attention that in both copyright and trademark statutes protect not only the sale of goods, but the display and advertising of goods. So in the copyright case, one of the rights, exclusive rights granted to the copyright owner is the right to publicly display the copyrighted work, and the trademark laws prohibit the trademark or trade dress in advertising. Where in this record will we find that there was purposeful availment of the form? Your Honor, the purposeful availment was the decision by the defendant to have a website, an online virtual store that was set up to intentionally access all 50 states. So there's no jurisdiction in this country where your theory would not apply?  So there's no jurisdiction in this country where your theory would not apply? Is that correct? That's correct. When a defendant sets up a virtual online store with the intent to conduct business in all 50 states and the information on the website is the basis for the cause of action, which is an important factor in this case. In many of the other cases, in many of the cases cited by the district court, there was no link between the cause of action and the advertisements on the website. In this case, the advertisement and the display of the products on the website is the basis for the cause of action. And on that reasoning, your Honor, yes, the defendant has made the decision to do business in all 50 states and it should be reasonable to be held in the court in all 50 states if the website creates an offense in and of itself. Going to the error, the district court required that sales be a requirement. And that's just simply not in the law. And, again, it goes back to a lack of attention to the substance of law and the rights that are protected. In copyright, the right that's protected is the public display of the item. In trademark law, the advertisement, use of the goods in advertising. Both of those are admitted, essentially. They're alleged in the complaint and they're not controverted by the declaration of the defendant. The district court relied on or found that the Zippo case, which this court adopted in the Mink decision, her ruling was on page 11 and page 259 in the record, that personal jurisdiction under Zippo, however, contemplates actual internet sales to forum residents, not the theoretical possibility of sales. Well, that may be true if the underlying cause of action requires sales, but not in a situation where the underlying causes of action do not require sales. And in any event, Zippo did not require that sales. The Zippo holding was to create a spectrum of liability, if you will, based on the interactivity of the website. The more interactive the website, the easier it would be to obtain or exercise personal jurisdiction over the owner of that website. In this case, the district court seems to have circumvented that whole analysis by requiring sales. And I pose the question, if sales are required in every instance, why bother with determining interactivity? It would seem to me that you would go strictly to the question, is there a sale or not? If there's no sale, no jurisdiction. But that's not the law. What Zippo recognized was that the interactivity of the website reflects an intention by the owner to do business in the jurisdiction. The more interactive the website, the greater is the intent to actually do business in the forum. Going to Judge Ho's question, that's the case here. This is a virtual store. This is a defendant who made the decision to conduct business virtually. Opportunity for small companies to get started and have a national market immediately. And that was the decision they made. It was a deliberate and intentional decision to create a virtual store website. This wasn't by accident or fortuitous. And that website is available and accessible. And admittedly, the defendants admit that it's accessible to residents of Louisiana. And that's where the display and advertising took place. And that's where the defendant should be brought to answer for its offenses. Going back to the Zippo case, it was a trademark case. And there the district court, relying on the Supreme Court case, the McGee case, that holds even a single contact may be sufficient to support jurisdiction, determined that the trademark violation occurred where the passing off occurred, which was in Pennsylvania, and Zippo held that jurisdiction was proper. There was no requirement in Zippo for sales. This court's decision in the Mink case, which adopted Zippo, that was a software copyright case. In that case, it was a passive website. Again, Mink doesn't say that there's a requirement that sales have to take place. And there, the evidence was that there was no business being conducted over the website and that none of the contacts in the form were tied directly to the cause of action. In that case, infringement of a software copyright. The other cases that the district court relied on are generally and easily distinguishable. Would we be creating a split, though? Would we be creating a circuit split? Not that I'm aware of, Your Honor. I think that the Supreme Court's decision in McGee and its progeny— The Seventh Circuit hasn't said that it's not enough to simply create an interactive website? I'm not familiar with that, but, Your Honor, again— And it's tactical? I'm not taking the position that merely having an interactive website confers personal jurisdiction in every case. No, there has to be a connection to the underlying cause of action. So, for example, in the NextLearn case, which was relied on as a patent case, there you could have had a highly interactive website, but if that website didn't connect the products that are accused of patent infringement, there would be no jurisdiction. And that was the holding in that case, is that the website, the activity on the website, could not be tied to the accused product that we're alleged to be infringing. So you can have an interactive website— Let me say it this way. Merely having an interactive website does not confer jurisdiction. There has to be a connection to activity on the website, to the cause of action. Where the interactivity of the website really addresses the question of the intent. Was there an intent to do business in that state, undertake commercial activity?  Yes, that occurred on the website. That occurred in Louisiana, in all 49 states. So in this case, jurisdiction would be available in all 50 states, but it's limited to the products that were advertised and promoted and displayed on the website. Had those products not been displayed on their website, had not been advertised on their website, we wouldn't be here because there would be no jurisdiction, regardless of the interactivity of that website. The other cases were mostly district cases out of Texas. And again, they're distinguishable in that most of the cases found the websites to be in the middle ground, so there was lack of interactivity that mitigates the intent to do business in the states. If it's a non-interactive website, that's evidence that the owner is not intending to do business in the state. Autoflex was a district court case out of Dallas, where I would say the district court did misread ZIPA was requiring sales, so that case shouldn't be relied on. The CMC Steel case that the defendant, that the magistrate judge relied on, was a stream of commerce case, and we're not arguing stream of commerce here. M3 Girl was a case with special circumstances, and I would suggest to the court that that case was really decided on more of a fairness grounds. The judge made the observation that the defendant was an individual, small business woman. She was a breast cancer survivor. She was acting pro se, and the court basically said he wasn't going to require her to defend the case in Dallas. Going to the question of the fairness of hailing the defendant into court, comparing that to more conventional advertising in magazines and newspapers, I don't think it would be disputed if an advertisement in a magazine caused an offense that the defendant couldn't be brought into court in the state where that offense occurred. Here, these internet websites, they operate 24-7, 365 days a week. They're accessible to everyone in the jurisdiction. I compare that to a billboard. If the defendant had set up a billboard outside of Monroe, Louisiana, the billboards don't . . . you can't buy through a billboard, but if that advertisement . . . A billboard is a physical, tangible manifestation that has to be location-specific. That's different from an internet or broadcast or national publication. It's not different in the result, Your Honor. The result is that that . . . My only point is a billboard case would not be analogous. You'd have to have something that doesn't have a location-specific aspect. Well, I would contend that the website is location-specific in the sense that it covers the entire country. The billboard only covers one small area along a highway, for example. The internet is a nationwide billboard. It's a billboard that goes into every home or to every person with an internet linkage. They're exactly intended to do the same thing. As a policy matter, it's not a crazy theory. It's just not a theory that circuit courts have accepted. Well, I'm suggesting that this court might want to consider that. The reality today is that the internet is pervasive. It's certainly the future. The offense that occurs to intellectual property owners, it's not just defendants in this country, but it's defendants throughout the world. From anywhere in the world, a defendant can create harm in a jurisdiction by placing an ad on a website that's accessible to the residents and consumers in that jurisdiction. The harm in a trademark case is it dilutes the trademark. It can divert sales from the trademark owner to the defendant. It's only fair to force, to make such a defendant come into the court and defend itself in that jurisdiction. Otherwise, if the rule is that an interactive website can never be the basis for jurisdiction, then a defendant like this one would only have one place where it could be hailed into court, and that would be in its home court. For a U.S. defendant— Nothing prevents you from suing in Wisconsin, I take it. Pardon your— Nothing prevents your client from suing in Wisconsin in this case. No, it doesn't. I understand you prefer Louisiana, but— Correct. But it would also then suggest that a state like Louisiana that has its own unique way of looking at the law would not— plaintiffs would not be able to enforce their Louisiana rights in Louisiana before a Louisiana court and a Louisiana jury. They'd have to go to Wisconsin to enforce those rights. And I don't think that's efficient or fair. Counsel, let me ask you one question. In the Arpanoia v. Neff, personum jurisdiction doctrine is chasing the electronic surge, chasing the elaboration of communication. It taxes those principles. The Supreme Court some while ago, I think in 1980, responded to that with asking in the Ford case whether or not there has been a cultivation of that particular market. And that seems to have held up for at least those years to accommodate the fairness insistence that underlies these due process limitations. Why does the Ford cultivation of a market standard answer this case? I don't think I quite followed the question. Well, how would you apply the Ford standard of— which you asked about whether or not there's been a cultivation of a particular market? Oh, well, in here, the cultivation is not of a— the cultivation is the market in the United States. I mean, the United States can be viewed as a single market. It also could be broken down into— Cultivation for a product in the forum state is what Ford said. Not just cultivate a market, but in the—it's targeted. Well, Your Honor, if that kind of targeting is required, and I really don't even know how that would take place for a product that's intended for every American, if you will. You know, I guess targeting Louisiana, you could put— Well, the implication of it to me is that it requires more than a website. Well, the thing of it is that the intent— I think going back 20, 30, 40 years, the electronic media was more focused on specific markets. I mean, they were forums for talking about certain issues, or they were targeted at specific types of consumers. The retailing that we're talking about in this case, that was a local business. I mean, in 1980, every town in America had a little baby shop. And now, what would have been a small shop in Wisconsin can open up to the entire market in the United States, and that website acts like the storefront in every hamlet in the country, in every town in Louisiana. Their intent is to cover every town, every city in America. If they did not wish to do that, there are techniques that can be employed to limit sales from certain states. And some people do that. They don't like the laws in a particular state, and they make it known that they're not going to sell products into that state. That's not what happened here. The defendant wants to sell, wants people to buy throughout America. And so the intent on the defendant's side is clearly to sell in the forum state. All right. Your opening time has expired, Mr. Ciepiela, and you've saved time for about half an hour. Thank you, Your Honor. Ms. Mark? Thank you, Your Honor, and may it please the Court. This is a case about one of the most basic requirements of due process, the requirement that there be minimum contacts before a defendant be hailed into court in a foreign state, and whether the existence of a website alone, with no evidence of any commercial activity related to that site and no evidence of contact with the foreign state, is enough to show minimum contacts. As this panel has recognized, minimum contacts requires an act or acts by which a nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state. And in this case, as regards the accused products, the teether toys and the squeeze feeder, East Rock has conducted no activities within Louisiana at all. There have been no sales to any Louisiana residents. There's not even an allegation in plaintiff's complaint that anyone in Louisiana has even viewed the products on this generally accessible website. Plaintiffs have acknowledged that their case is based entirely on the existence of a generally accessible website that does not target Louisiana specifically, but instead targets the whole of the United States. Suppose hypothetically, and it's not your case, suppose hypothetically everything was the same except that there was irrefutable evidence that residents of Louisiana had viewed the website. Would that make a difference? Your Honor, it wouldn't be quite as clear a case as this, but given the fact that this court has recognized repeatedly that passive advertisements aren't enough to establish specific jurisdiction, in the absence of any commercial activity, we'd argue that in that instance, the website would be functioning more like a passive advertising platform, or perhaps to use the analogy that the Federal Circuit used in the Nexlern case, it would effectively be operating as an out-of-state store. There'd be a hypothetical willingness to do business with Louisiana residents perhaps, but that doesn't mean that East Rock would have availed itself of the privileges of conducting business within Louisiana, nor would it have availed itself of the benefits of Louisiana's laws. So in that instance, Your Honor, we contend that without anything else, only website views, no, that wouldn't support specific personal jurisdiction either. But as Your Honor recognized, that's not our case. We don't have an allegation of any website views whatsoever. And plaintiffs have recognized that their case would effectively extend personal jurisdiction for any defendant maintaining a website to the entirety of the United States. Plaintiffs' point of distinction was that this case is different because the claims in this case arise directly from the website, but that's the second prong of the specific jurisdiction analysis. That's something that plaintiffs separately have to demonstrate in order to establish personal jurisdiction. It doesn't mean that minimum contacts have been met here simply because plaintiffs argue that they've met the second prong, that direct connection between the forum state and the claims at issue. So Your Honor, we would request that the court affirm the dismissal of this suit for lack of personal jurisdiction. There's really no disputed facts at issue in this case. As plaintiffs have acknowledged, the generally accessible website is the only thing on which they base their case for personal jurisdiction. Counsel, if physical presence is not required, I would say why wouldn't the views of the website from a particular state cast light on the presence within the state? In other words, the website... I think that's an objection to my question. The website obviously knows where those inquiries are coming from. It would keep those up. But if you get a lot of inquiries, a large number of inquiries from Louisiana, why isn't that reflective of a presence within the state, a presence in the contemporary sense? If I understand your question correctly, Your Honor, you're speaking specifically about website views and the ability of a website operator to know where those are coming from based on ISP addresses. Is that correct? Well, I assume that somebody who has a website, technically they certainly know where the inquiries are, who's hitting the website, and knows that. And if they're getting a lot of inquiries from a particular state, why doesn't that signal some form, in the modern sense, a presence within that state? Because, Your Honor, they're still not purposefully availing themselves of a particular state. Now, it's possible that in a case like that, the defendant would be taking some action in order to direct traffic to its website from a particular state, for example, through targeted advertising, through meta-tags and searches. Those might be ways to reach out to a specific state rather than the entirety of the United States as sort of a single unit, so to speak. But if the requirement that purposeful availment of a particular state... Were you crying that there'd be more hits from Louisiana than from Mississippi, for example, to reach targeting? Why wouldn't they reach out? If you have the concept, if you had a large number of inquiries coming from many states, all those states might be set to be fairly present for purposes of due process. Your Honor, the... Excuse me. Personal jurisdiction analysis, as I think you've recognized here, isn't mechanistic, it's not strictly quantitative, and it's very fact-intensive. So conceivably there could be a case where there's... Quantitative but not factual? I'm sorry, Your Honor? I didn't understand what you said. Sure. So the Supreme Court, when it established the minimum contacts test in International Shoe v. Washington, said that that test was not meant to be applied and can't be applied mechanistically or purely on a quantitative basis. It's very fact-intensive. So perhaps there could be a case where a website is receiving sufficient traffic and inquiries, as you noted, to support personal jurisdiction. I don't believe we've... Excuse me. I'm not going to set any limits on that. It's not really possible. But regardless, what we have here is not a case like that. We don't have any evidence of anybody accessing these pages at all, let alone making any sales. And if the minimum contacts analysis is to mean anything, even in the age of the Internet, it has to require something more than a generally accessible website that a person in a particular state could access but may or may not have. So, Judge Ho, as you noted, the courts that have considered this question, including the Fourth Circuit, Seventh Circuit, Eighth Circuit, Tenth Circuit, D.C. Circuit, and the Federal Circuit, have all held that the mere existence of a generally accessible website is not sufficient to establish personal jurisdiction. And this court's decision in Pervasive Software Incorporated versus LexWare 688F3214 is actually on point as well. In that case, LexWare was a German company. It had no offices or agents in Texas. It had solicited no business through advertising that was targeted specifically at Texas. It actually had made sales of 15 different software programs to 12 persons or businesses in Texas over a four-year period. And this court analyzed whether LexWare, making its tax and financial software products Internet-accessible, qualified as purposefully availing itself of the privilege of doing business in Texas. And it held that none of the contacts relied upon by Pervasive to invoke specific jurisdiction over LexWare in the Texas forum count because none of them were established purposely by LexWare. So that's what matters for purposes of this analysis. Even though in the Pervasive Software case there were actually sales to the Texas forum,  there was no evidence that LexWare had made the choice, had made purposeful attempts to build its market in Texas or avail itself of Texas' laws. And by the same token, Eastrock, which has no sales through its own website to Louisiana at all, having made its website accessible nationally, does not demonstrate a purposeful attempt to develop a market for these accused teeters or the squeeze feeders in Louisiana. Other circuits have agreed. The Seventh Circuit in the Advanced Tactical Ordinance System case that Judge Koh noted earlier, 751 F. 3rd 796, went so far as to say that having an interactive website, which hardly rules out anything in 2014, should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. And the Advanced Tactical Ordinance System case, that was an intellectual property case. That case did involve Lanham Act claims. So plaintiff's attempt to distinguish the present case on the grounds that it involves intellectual property, that's already been rejected. Plaintiffs are really seeking a sea change in the law of personal jurisdiction. The ramifications of plaintiffs' theory here would effectively eliminate the defense of personal jurisdiction for every person or business maintaining a generally accessible website which nowadays is incredibly common. And it would eliminate the limits on states' power over forms of defendants. Any claim based on Internet activity could give rise to suit anywhere. The Fourth Circuit recognized that problem in the ALS Scan case, 293 F. 3rd 797. The D.C. Circuit recognized as much in GTE New Media Services, 199 F. 3rd at 1350. The Federal Circuit recognized as much in the next slurring case I mentioned earlier, 859 F. 3rd 1371. This court should take the opportunity to recognize as much as well. Plaintiffs have even admitted that their argument, that this would be the consequence of their desired holding. Their argument is that by maintaining this hypothetically accessible website across all 50 states, East Rock enjoyed the benefits and protections of each of the 50 states. And it's worth noting that there's nothing unique about Louisiana in plaintiff's theory. It applies equally across the U.S., as Judge Ho noted. Turning briefly back to plaintiff's argument that this case is different because of the nature of the claims here, the intellectual property claims arising directly from the website activity, the case of Revell v. Litoff, 317 F. 3rd 467, is a helpful analog to that case. There's really no substantive point of distinction between Revell and this case as it relates to the requirements, as it relates to the nature of the claims. Revell involved an online bulletin board. Litoff had posted a hypercritical article of Revell to that bulletin board. Revell lived in Texas, and the article could be viewed by members of the public over the internet. The site, as this court noted, was interactive. Visitors could participate in an open forum that was hosted by the site. But this court held that that wasn't enough to establish personal jurisdiction in Texas. On page 475, the court wrote, one cannot purposefully avail oneself of some forum someplace. The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being hailed into court in that forum. At page 476, the court wrote, a more direct aim is required than we have here. And here there's nothing in the record, just as in Revell, that East Rock is chargeable with knowledge of the conduct directed at Louisiana. Plaintiffs have essentially argued that East Rock has purposefully availed itself of all the states, and that's not the appropriate analysis under Revell. So you're saying Revell is like this case in that the cause of action is based on the display itself? Exactly. It's not about sales. Defamation is just about the posting. Same thing here, it's just about the posting. That's correct, Your Honor. The claim, as you noted, it was for defamation. It was based entirely on the display of that article on the bulletin board. Sales weren't involved. The cause of action clearly arose directly from the website and the display on that website. But there was no personal jurisdiction in the Revell case. Your Honor, briefly I'd like to address the Zippo case and the Zippo analysis. Plaintiffs have suggested that Zippo doesn't require actual sales, but what Zippo does require is contacts. Minkport, in 190 F. 3rd, at page 336, in adopting the Zippo scale, noted that the highly interactive side of that scale consists of, quote, situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states, which involve the knowing and repeated transmission of computer files over the Internet. So plaintiffs are correct insofar as it doesn't say anything about sales specifically, but that highly interactive side of the Zippo scale does require contacts. Nothing in Zippo and nothing in Mink change that. Plaintiffs also suggested that Zippo didn't require any sales. Sales, excuse me. The Zippo case did find personal jurisdiction based on its sliding scale, but it found personal jurisdiction not just based on the existence of a website, but the fact that the defendant actually had 3,000 subscribers in Pennsylvania, as well as agreements with seven different Internet service providers in Pennsylvania to allow their subscribers access to the defendant's services. So there clearly were contacts at issue in the Zippo case. So, Your Honor, this court need not reach the other two prongs of the specific jurisdiction analysis. There are no minimum contacts here, and that's enough to end the inquiry. Failure to establish minimum contacts  cannot be said to have arisen out of the forum-related contracts, but at any event, the lack of minimum contacts is fatal to the personal jurisdiction analysis. Plaintiffs have conceded that they're not analyzing this case under the stream-of-commerce test, so unless Your Honors have any questions about any of those analyses, I'd just like to end by recognizing that plaintiffs have cited to McGee and the changing technological landscape in this case as perhaps a reason to update personal jurisdiction. But after the McGee case, the Supreme Court in Hansen v. Denkla specifically rejected the idea that changing technology implies abandoning the requirements of due process. The court wrote, It is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the minimal contacts with that state that are a prerequisite to his exercise of power over him. It remains the case that a defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum state. And that second quotation is from the Ford Motor Company case in 2021. The context still must be the defendant's own choice. Those requirements simply are not met here. So unless your honors have any additional questions, I'd like to respectfully request that the court affirm the decision of the district court. All right, thank you, Ms. Moore. Mr. Chiviello, you've saved time for a ballot. Thank you, Your Honor. Just a couple of points. One of the points that my colleague made is that there's no evidence of access by Louisiana residents. Well, there doesn't need to be any evidence of access because that's part of the allegations and the complaint that were not controverted. There was a who declaration was put in and she did not contradict or she did not make the statement that no Louisiana resident had access to the website, which she could have done had that been the truth. Websites give plenty of data as to who views the site. There was no evidence put into this record that there was an absence of Louisiana. Do you want to take your bet, Your Honor, at distinguishing Ravel? Yes, Your Honor. Ravel was a defamation case and the website wasn't interactive in the same way that this website... That's not what the court said. I would say my recollection of the Ravel website is that it was a forum for... Columbia's bulletin board is thus interactive. I'm sorry, Your Honor? Columbia's bulletin board is thus interactive. It was a bulletin board. It was a forum for discussion versus what's here is a commercially interactive website. And I would make the difference between commercial and speech. The courts have a much different... I view it at much different standards when free speech is involved as opposed to commercial activities such as the buying and selling of goods. So I would distinguish Ravel on that basis. But there was a discussion of ideas. People weren't trying to buy and sell products. In this case, we're talking about a website that the sole purpose of the website is to put products out there to make them available to consumers and to make those products available to consumers throughout the country. If I could push back, too, Your Honor, on the question about the billboard. I guess I just view the sending of electronic signals throughout the country to be the same as sending a paper advertisement. They are physical in one sense. One, we can't... Electronic signals, we may not be able to see until they're displayed in a certain way. But they are still... It's still a physical transmission of information to the location. Your time has now expired, Mr. Chief.  Thank you, Your Honor.